106 N.J. Super. 173 (1969)
254 A.2d 540
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VICTOR PACHECO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1969.
Decided June 20, 1969.
*175 Before Judges CONFORD, KILKENNY and LEONARD.
Mrs. Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Rushton H. Ridgway, Assistant County Prosecutor, argued the cause for respondent (Mr. Joseph Tuso, Cumberland County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals from a conviction in July 1968 for first degree murder, with sentence of life imprisonment. The crime occurred in 1959, and a previous trial and conviction in 1960 was followed by a reversal and remand for trial errors. State v. Pacheco, 38 N.J. 120 (1962).
The State's case at both trials was based on the theory of a felony-murder. At the first trial, an alleged co-participant in the crime, one Bobo Nelson, who had pleaded non *176 vult and was sentenced to life imprisonment, implicated defendant as having joined him in a plan to rob the victim, a farmer. That plan culminated in Nelson killing the victim when he resisted the robbery. Defendant testified at that trial, admitted going to the farm with Nelson, but only for the purpose of helping Nelson find work, and claimed an effort to disassociate himself from Nelson action's in attacking and robbing the victim.
Subsequent to the first trial both Nelson and defendant became psychotic and were confined in hospitals for the criminally insane. Nelson's testimony at the first trial was read to the jury at the second trial because of his incapacity to testify at that time. The State offered additional incriminatory testimony at that trial, as it had at the first. Defendant did not take the stand in his own defense at the second trial.
Defendant was administered electro-shock therapy in 1964, and it was asserted on his behalf at the outset of this trial that he had, as a result thereof, no memory whatever of the events of the day of the crime. However, a state psychiatrist (Dr. Brancale) who examined defendant the day of the commencement of the trial (and previously in 1963 and 1965) testified defendant told him he was in the state hospital the day of the crime. But he told a defense psychiatrist (Dr. Rubin) the same day that he was in Salem County jail the day of the crime and had not met Nelson until they were in jail together in 1960. (They were actually in jail together in 1959, prior to the instant crime.)
The principal ground of appeal is that defendant was incompetent to stand trial because of his present total failure of memory of the events of the critical day and of his consequent inability to prepare a defense with counsel  an asserted denial of due process.
The trial court on its own motion conducted a hearing on the issue at the outset of the trial. We need not discuss the expert testimony in detail. The opposing doctors agreed that, aside from the memory lapse, the defendant was mentally *177 able to stand trial in the sense of orientation, awareness of the nature of the charge and capacity to cooperate with counsel. Dr. Rubin, for the defense, testified that as a result of the shock treatments, defendant was presently "incapable of relating the facts" which occurred the day of the murder. He was further of the opinion that the amnesia would not disappear in the near future. Questioned as to these matters, Dr. Brancale, for the State, testified that "extensive shock therapy does result in an amnesia sometimes prolonged and sometimes less so," but that it was his opinion that defendant had "the capacity to recall the events of that period in 1959." He opined that only events close in time to the therapy are apt to be affected and that it "would not blot out an important area of his life's experience completely."
The trial judge concluded, on the basis of Dr. Rubin's greater experience in the field of shock-treatment effect, that defendant "cannot recall the events of that date and is under that disability." He nevertheless ruled that in view of the defendant's competency in all other respects, the complete uncertainty as to when, if ever, he would regain recall of the events, the alternative of releasing the defendant from custody, the fact that many criminal defendants for one reason or another have degrees of incapacity to remember the occurrences surrounding the charges against them, and the State's obligation affirmatively to prove the defendant's complicity, the interests of "fair play to the State," balanced against the "equities" of the defendant, required the trial to proceed.
Adding the factor of the availability to defense counsel of the transcript of defendant's testimony at the first trial, and defendant's right to offer it in his defense in view of his present amnesia, McCormick, Evidence (1954), p. 494; Evidence Rule 63(3)(a)(ii), we conclude that the trial judge's decision on capacity to stand trial was correct.
New Jersey courts have not heretofore been faced with the specific question of loss of memory of the critical events as of the time of trial as affecting legal competency to stand *178 trial. The test, in terms of mental incapacity generally, is whether the defendant's "mental condition is such that he is unable to comprehend his position, to consult intelligently with counsel and plan his defense." State v. Lucas, 30 N.J. 37, 72 (1959). The last-mentioned factor is what is peculiarly implicated here. In a leading and thoughtful study of the problem, Note: "Amnesia: A Case Study in the Limits of Particular Justice," 71 Yale L.J. 109 (1961), it was found that "there is no record of any court holding a defendant incompetent to stand trial solely on the basis of amnesia." The author, while sensitive to the need of procedural devices in a criminal trial of an amnesic designed to lessen the incidence of unfairness arising from the condition (id., at 130-135),[1] nevertheless concludes:
"Once it is recognized that amnesia is present to some degree in everyone and that its effects on the ability of an individual to assist in his own defense are often hard to distinguish from the disadvantages of many defendants to whom important facts are unavailable for reasons other than amnesia, it should be apparent that it is neither necessary nor appropriate to consider memory failure as a sufficient condition for the interruption of the adjudicatory process to minimize the danger of a miscarrage of justice. The special demands of extraordinary cases should, where possible, be met without losing sight of the fact that a generaly effective system of criminal adjudication has been developed around rules of evidence and procedure calculated to insure a workable balance of the interests of the accused, the prosecution, and the court. Pending a wholesale revision of the criminal process, exceptional procedures should jealously be reserved for exceptional cases, lest more fully tested techniques be prematurely displaced." (at p. 136)
In Regina v. Podola, [1959] 3 All E.R. 418, [1959] 3 W.L.R. 718, the Court of Criminal Appeal held that hysterical amnesia of the critical events in an otherwise sane defendant did not render him "insane" for purposes of the statutory proscription of trial of such persons. It quoted with approval a prior decision indicating the opinion that a *179 contrary view "would come near to paralysing the administration of criminal justice." 3 W.L.R., at p. 734.
Perhaps reflective of the underlying philosophy of most of the relatively few American cases on the point is the expression of the Pennsylvania Supreme Court in Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 218 A.2d 758 (1966), certiorari denied sub nom. Cummins v. Price, 385 U.S. 869, 87 S.Ct. 136, 17 L.Ed.2d 96 (1966), in relation to a defendant under indictment for murder who alleged that he had sustained a complete and permanent memory loss (apparently from a self-inflicted gunshot wound in the head at about the time of the shooting of the victim):
"Nevertheless, we are constrained to hold that defendant is not entitled at this time (1) to a discharge from the indictment for murder, or (2) to a stay of proceedings under the aforesaid common law test or under the Mental Health Act. This defendant (we repeat) is able to comprehend his position as one accused of murder, is fully capable of understanding the gravity of the criminal proceedings against him, and is as able to cooperate with his counsel in making a rational defense as is any defendant who alleges that at the time of the crime he was insane or very intoxicated or completely drugged, or a defendant whose mind allegedly went blank or who blacked out or who panicked and contends or testifies that he does not remember anything." (218 A.2d, at p. 763; emphasis by the court).
An interesting set of judicial reactions to the same problem is found in the recent case of Wilson v. United States, 129 U.S. App. D.C. 107, 391 F.2d 460 (1968), where it appeared that a defendant tried and convicted for assault with a pistol and robbery suffered from permanent retrograde amnesia resulting from an automobile accident shortly after the alleged crimes. Two of the three appellate judges voted (one rather reluctantly, expressing "personal" satisfaction with the fairness of the procedure resulting in the conviction) for a post-trial hearing and determination of whether "under applicable principles of due process" the conviction should stand, in the light of special findings to be made by the trial judge on the following factors: (1) *180 effect of the amnesia on consultation with counsel; (2) effect of the amnesia on defendant's ability to testify; (3) extent of possible reconstruction of the evidence "extrinsically" in view of the amnesia; (4) extent of assistance by the Government toward such reconstruction; (5) strength of prosecution case, particularly in respect of possibility that defendant could establish a defense but for the amnesia; (6) any other facts bearing upon the fairness of the trial. The dissenting judge felt that the defendant's loss of memory was an insuperable obstacle to a trial consonant with due process.
It is our considered view that, whatever might be thought as to a case being tried for the first time, where it was in reasonable prospect that the defendant might relatively soon regain his memory, or where the prosecution case was weak and a fair possibility was presented that the defendant, if not deprived of memory, could present a colorable defense, the clearly determinative circumstance here is the availability to defendant and his counsel of the defendant's version of the events as of the time of the first trial. Pertinent are both the utility of the transcript for preparation for trial and as substantive evidentiary material offerable on defense. That the defense did not here attempt to use it in the latter regard is of no present avail. Also significant here is the obvious strength of the prosecution case.
Balancing the interests of the State in defendant's prosecution and defendant's interests in a fair trial, within the limits of reasonable practicality, and under all the attendant circumstances, we find the disposition of the matter by the trial judge to be correct.
The second ground of appeal advanced is the denial of a motion for mistrial during the selection of the jury, after only two jurors had been drawn and sequestered, based upon newspaper stories concerning the impending retrial wherein it was stated that defendant had been previously convicted and sentenced to life imprisonment but had won a new trial on appeal. The remainder of the jury panel had read the news accounts.
*181 In denying the motion, the trial judge was of the opinion that the jurors would probably know of the earlier conviction anyway since it had been a matter of notoriety in the community at the time of the first trial; moreover, that the situation was distinguishable from publicity concerning convictions for other crimes. We cannot find a mistaken exercise of discretion in the denial of the motion, within the guidelines of State v. Van Duyne, 43 N.J. 369, 386 (1964), certiorari denied sub nom. Van Duyne v. New Jersey, 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965). If any of the jurors did not know of the prior history of the case before reading the news articles, that knowledge very probably came to them with the reading of Nelson's testimony from the first trial. Nor do we find knowledge by the jury of the earlier conviction and the reversal on appeal to have been inherently prejudicial.
Defendant's final argument is to the effect that a comment by the prosecutor in summation was an impermissible comment on the accused's failure to testify on his own behalf. The prosecutor said:
"This was an area Mr. Pacheco knew well. This was a house only Mr. Pacheco knew, and he said `That's the house. The man is alone. That's where you are going to get the money,' and then they went into that house and unquestionably `Bobo' Nelson is the one that used the knife, that struck the death blow, but this Defendant seated here at the counsel table was nowhere else that day, and there is no evidence to indicate that he was somewhere else. Mr. Nelson and Pacheco were both in the house of Mr. Oliveria that day for the planned purpose of Mr. Pacheco to commit a robbery." (Emphasis added)
We note at the outset that no objection was offered to the comment until the end of the summation. This is of dubious propriety. State v. Gosser, 50 N.J. 438, 452 (1967). In any event, the contention lacks merit.
The defense had adduced the testimony of a psychiatrist, Dr. Del Castilo, who treated Nelson at the State Hospital in 1968. He testified that Nelson often told him in the course *182 of such treatment that defendant was not "involved in the crime"  that he was sorry he had involved defendant  and that everything was his (Nelson's) fault. In view of this testimony, the prosecutor's statement, objected to by defendant as necessarily an allusion to the defendant's personal failure to testify, is more reasonably understandable as an oblique observation as to the failure of the Del Castilo testimony to reflect any admission by Nelson that defendant was not present at the scene of the crime  the point then under stress by the prosecutor being such presence  as opposed to a mere generalization by Nelson that defendant was not involved in the killing itself. So viewed, the prosecutor's comment does not transgress the bounds of the right of the State to make "fair reference to legitimate inferences from non-production of evidence" without falling afoul the non-comment rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1065). And see State v. Gosser, supra (50 N.J., at p. 453).
Judgment affirmed.
NOTES
[1] Such as admission of his exculpatory testimony at a former trial (71 Yale L.J., at 134).