122 N.J. Super. 249 (1973)
300 A.2d 167
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK D. SPIVEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 1972.
Decided February 1, 1973.
*251 Before Judges COLLESTER, LEONARD and HALPERN.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mrs. Martha K. Kwitny, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for respondent (Mr. Ralph J. Jabbour, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by COLLESTER, P.J.A.D.
Defendant was found guilty by a jury of the rape and robbery of Sadaline Moster. He was sentenced to a prison term of 16-23 years on the conviction for rape and to a concurrent prison term of 6-9 years on the conviction for robbery.
The crimes occurred on November 26, 1969 and defendant was arrested on that date. The case first came on for trial on September 21, 1970 but resulted in a mistrial caused by defendant's disruptive tactics. On the second day of that trial the court conducted a voir dire hearing and found that the victim's out-of-court identification of defendant, while she was in a hospital a few hours after the crimes were committed, was admissible in evidence.
On January 4, 1971 a hearing was held with a jury, pursuant to N.J.S.A. 2A:163-2, to determine defendant's sanity at the time of the hearing, at the time of commission of the offenses, and his competency to stand trial. The jury found defendant sane on both occasions and that he was capable of conferring with counsel and aiding in the conduct of his defense.
Defendant's second trial began on May 3, 1971 and continued through May 7. At the outset, over objection, the trial judge ruled that his earlier finding in September 1970, *252 that the pretrial identification by the victim was admissible, was the law of the case. The judge also denied defense counsel's request for another competency hearing.
Prior to the selection of the jury defendant was brought into the courtroom, but because of his refusal to be seated or to desist from railing at the court he was bound and gagged. He continued to moan, groan and bang his hands on the counsel table. The court ruled that until defendant behaved properly the only time he would be brought into the courtroom was at the time his presence was required for identification. The court also denied defense counsel's motion to be relieved. Thereafter, during the course of the trial when defendant was brought into the courtroom he continued his disruptive tactics.
The State's proofs indicated that on the evening of November 26, 1969 Miss Moster alighted from a bus at Bloom-field Avenue in Montclair and started across the street looking for a taxicab. She was accosted by a black man and a white man (subsequently identified as defendant Spivey and Frank Fabrizio) who were in a pizzeria delivery truck. Miss Moster was forcibly pulled into the truck, which was then driven away to a secluded area where the men robbed her and defendant raped and beat her. When she was finally released she went to a house for aid. She was taken to a hospital and the police were notified of the attack. A short time later defendant and Fabrizio were apprehended and taken to the hospital where Miss Moster identified them as her assailants. Fabrizio testified on behalf of the State at defendant's trial.
The defense presented no evidence to refute the State's charges but offered expert testimony in an attempt to show that defendant was insane. The State, in rebuttal presented medical testimony to establish that defendant was sane and that he was feigning insanity.
On appeal the Public Defender, on behalf of defendant, raised the following points as grounds for reversal: (1) error in denial of a motion for a mistrial at the conclusion *253 of the sanity hearing; (2) plain error in the court's reliance on the jury's findings in the sanity hearing in determining that defendant was competent to stand trial; (3) error in the failure of the court to conduct a competency hearing immediately before or during the trial and sentencing; (4) defendant was deprived of a fair trial because he was tried and sentenced while incompetent; (5) the court erred in continuing the trial after defendant's bizarre behavior necessitated his removal from the courtroom; (6) the court erred in not adopting a method of courtroom discipline which would permit defendant to remain in the courtroom; (7) the court erred in denying defense counsel's motion to be relieved; (8) plain error in depriving defendant of his right to be present at the sanity hearing; (9) there was insufficient evidence adduced to establish the elements of robbery; (10) the court erred in refusing a postponement of the trial so that one of defendant's psychiatrists could be present to testify; (11) error in denial of a mistrial motion on the ground that the victim said defendant was pretending to be insane; (12) the court erred during the voir dire examination of jurors by referring to the racial differences between defendant and the victim; (13) defendant was denied a jury of his peers because the prosecutor contributed to the systematic exclusion of black jurors; (14) the prosecutor's summation improperly directed the jury's attention to the possibility that an insane defendant might be released; (15) the sentence was excessive, and (16) the aggregate errors denied defendant a fair trial. In addition thereto defendant submitted a pro se brief contending: (a) the court failed to provide a speedy trial; (b) police identification procedures were improper; defendant was deprived of a Wade hearing; (c) the court admitted testimony from a psychiatrist in violation of his Miranda rights and his doctor-patient privilege; (d) the presentence investigator never interviewed defendant, and (e) defendant was denied his right to a preliminary hearing.
*254 We have carefully considered the points raised and find no reversible error in any of them. Only a few of them warrant any discussion.
We deal first with the contention that the trial judge committed error in submitting the issue of defendant's competency to stand trial to the determination of a jury in the proceeding brought pursuant to N.J.S.A. 2A:163-2. He argues that the statute relates only to the question of his sanity at the time of the hearing and at the time the offenses charged against him were alleged to have been committed. He asserts that the issue of competency to stand trial must be tried by the judge alone, and that since the judge, following the jury verdict, indicated that if he had been the trier of the facts he would have found defendant to be insane, he should not have allowed his own fact-finding to be overriden by the jury. We note first that defendant's contention is raised as plain error since the record clearly indicates that at no time did his counsel object to having the jury decide the issue of defendant's capacity to stand trial. In fact, in his opening to the jury at the sanity hearing defense counsel specifically stated, "First, you must decide whether Mr. Spivey can consult with me, his attorney, in an intelligent manner, so that I can prepare his case and defend his case." Moreover, no case has been cited which holds that it is mandatory for the judge to decide the issue of competency sitting without a jury. To the contrary, there are cases which indicate that the competency of an accused to stand trial may be submitted to a jury impaneled for that purpose. State v. Gibson, 15 N.J. 384, 387-388 (1954); State v. Auld, 2 N.J. 426, 435 (1949). See also, Aponte v. State, 30 N.J. 441 (1959), which states that the issue of capacity for trial can be decided by the court alone, or with a jury, although suggesting that it would ordinarily be more appropriate that the issue be tried by the court alone. We are satisfied that there was no plain error in the determination of defendant's competency by the jury.
*255 We find no error in the court's failure to conduct another competency hearing of defendant. At the outset of the trial on May 3, 1971 a report of a psychiatric examination of defendant made on April 30, 1971 by Dr. Winsten, one of defendant's medical experts, was submitted to the court. The record shows that it indicated no change in defendant's mental condition since the sanity hearing held in January 1971. The granting of a request for a competency hearing is committed to the sound discretion of the trial court. The court's failure to order such an inquiry will not be reviewed on appeal unless it clearly and convincingly appears that the defendant was incapable of standing trial. State v. Lucas, 30 N.J. 37, 73-74 (1959). We conclude there was no mistaken exercise of the court's discretion in the instant case.
We turn next to the Public Defender's argument that the court erred in continuing the trial after defendant's "bizarre behavior" necessitated his removal from the courtroom, and in failing to adopt a disciplinary measure which would have permitted defendant's presence. The record indicates that at the outset of the trial defendant began the same disruptive tactics he had engaged in during his first trial which had resulted in a mistrial. His conduct is described in the Public Defender's brief as "braying, kicking, spitting, singing, moaning, etc.", and the record shows he mouthed obscenities and insults to the trial judge and others. Attempts to cope with such tactics by binding and gagging defendant outside of the jury's presence were unsuccessful. As a result the trial judge was required to ban him from the courtroom. Defendant was advised that he would be permitted to return when he agreed to comport himself properly, but thereafter when he was brought into the courtroom he continued his disruptive tactics.
In Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), reh. den. 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970), the court stated that it is essential to the proper administration of criminal justice that dignity, *256 order and decorum be the hallmarks of all court proceedings in our country; that the flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. The court said that trial judges confronted with disruptive, contumacious, stubborn, defiant defendants must be given discretionary power to meet the circumstances of a case, and ruled that there were at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant: (1) to bind and gag him, thereby keeping him present; (2) cite him for contempt, and (3) remove him from the courtroom until he promises to conduct himself properly. In the instant case the trial judge clearly gave defendant every opportunity to be present in the courtroom. We find no abuse of discretion in the procedure followed here with respect to Spivey.
The final point meriting discussion concerns defendant's claim that the court erred in refusing to grant an adjournment of the trial so that one of the defense psychiatrists could be present to testify. The request for a postponement was made on May 3, 1971, at the outset of the trial. The psychiatrist, Dr. Davidson, was attending a convention in Washington, D.C. Although notified on April 23, 1971 that the trial would commence on May 3, defense counsel had not served the physician with a subpoena, and the record does not indicate that counsel had contacted the doctor. The trial judge refused to postpone the trial and notified defense counsel to contact the doctor to have him appear later in the week. The court also ruled that if Dr. Davidson could not be present, he would permit defense counsel to read a transcript of his testimony at the sanity hearing to the jury. When the doctor subsequently failed to appear during the four-day trial, the judge permitted the transcript to be read despite the State's objections.
It is well settled that the granting of an adjournment rests with the sound discretion of the court. State v. D'Orsi, 113 N.J. Super. 527, 532 (App. Div. 1971). Here the jury had the benefit of the doctor's previous testimony. *257 Defendant was not prejudiced. We conclude there was no reversible error in the court's ruling.
The judgment of conviction is affirmed.
HALPERN, J.A.D. (dissenting).
I am in substantial accord with the views expressed by the majority. However, I believe the trial court erred in denying defendant's application for a hearing to determine his competency to stand trial on May 3, 1971. The majority's reasoning was bottomed upon the fact that the motion was addressed to the trial court's sound discretion, and since the jury determined on January 4, 1971 that defendant was competent to stand trial, and Dr. Winsten's report showed no change in his condition, no mistaken exercise of the court's discretion was shown.
In gauging the trial court's action, we must consider the factual picture known to it when the motion was denied. The undisputed facts were that defendant, prior to the commission of the alleged rape and robbery on November 26, 1969, had been committed to various mental institutions on six or seven occasions; on November 27, 1969 he unsuccessfully attempted suicide in jail; he was confined in the Trenton State Hospital where he received electroshock psychotherapy until his first trial in September 1970; the trial in September 1970 resulted in a mistrial because of defendant's disruptive actions; he was recommitted to the State Hospital in October 1970 where he remained until the jury's finding on January 4, 1971 that he was sane and competent to stand trial (this jury finding was contrary to the trial court's own opinion as expressed to counsel); he was again confined in the State Hospital between January 1971 and the second trial on May 3, 1971; the State Hospital superintendent refused to honor the trial court's personal request to bring defendant from Trenton to Newark daily while the trial was in progress; Dr. Winsten's report of April 30, 1971 indicated that defendant was insane and could not effectively cooperate with counsel in preparation of his defense; Dr. Winsten certified on April 30, 1971, at the request of the *258 Newark Street jail authorities, that defendant be recommitted to the State Hospital (this was refused by the trial court); and defense counsel represented that defendant did not want him as his lawyer, would not cooperate with him, and that he was unable to strike up a rapport with defendant (the trial court refused to relieve counsel and ordered him to try the case).
With full appreciation of the trial judge's position in this situation, it is necessary to set forth some of the remarks he made in disposing of the motion. When counsel attempted to show the trial court Dr. Winsten's report of his recent psychiatric examination of defendant, the judge responded, "* * * I don't care what was in Dr. Winsten's report, this case was going on." In denying the motion he said, "The jury found him sane; he is still presumed to be sane, and there comes a time  there is a recent case which holds there must be finality to the matter. * * * Mr. Grieco, the case is going on. The man is presumed to be sane."
I am convinced from the record before us that a bona fide and reasonable doubt existed as to defendant's competency to stand trial, and the trial court's refusal to hold a hearing to determine the issue was a mistaken exercise of discretion which deprived defendant of his constitutional right to a fair trial. Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); see also, State v. Pugh, 117 N.J. Super. 26 (App. Div. 1971), certif. den. 60 N.J. 22 (1972), and United States v. McEachern, 465 F.2d 833 (5 Cir.1972). It is significant that four months elapsed between the jury's findings of competency on January 4, 1971 and the trial on May 3, 1971. It is reasonable to infer that defendant's mental condition could have deteriorated during that four-month period. This inference finds support not only in the actions of the authorities at the State Hospital, but in the prior testimony of the State's witness, Dr. Elizondo, who found defendant's mental condition to be in a state of remission in January 1971, but opined that "he might go off at any time." In addition, Dr. Winsten's opinion based on his *259 examination of defendant on April 30, 1971, when considered in the light of all the other circumstances relating to defendant's deportment, was sufficient to warrant granting the motion.
Before leaving the subject, I think it is important to reiterate for the benefit of trial judges that the issue of competency to stand trial is ordinarily more appropriately tried by the court without a jury. Aponte v. State, 30 N.J. 441, 455 (1959); Farmer v. State, 42 N.J. 579 (1964); State v. Pacheco, 106 N.J. Super. 173, 176-177 (App. Div. 1969), aff'd 54 N.J. 579 (1969), cert. den. 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 65 (1970).
Finally, I am constrained to point out that the prosecutor improperly dealt with the issue of punishment in his summation. He told the jury that if they acquitted defendant because of insanity, which continued to the time of trial, he would be returned to the State Hospital and would be released when the staff doctors at the State Hospital determined his sanity was restored. This was probably an unintentional misstatement since the court, and not the staff doctors, makes that final determination. State v. Maik, 60 N.J. 203, 219 (1972); State v. Bell, 102 N.J. Super. 70, 75-76 (App. Div. 1968), certif. den. 52 N.J. 485 (1968), cert. den. 394 U.S. 911, 89 S.Ct. 1026, 22 L.Ed.2d 223 (1969).
I would reverse the conviction and remand for a new trial after first directing a hearing to be held on defendant's competency to stand trial.