**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2534-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMIE K. HAYES, a/k/a
DUCE DUCE,

     Defendant-Appellant.

_____

Submitted September 17, 2018 – Decided September 3, 2019

Before Judges Messano, Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 15-07-0587.

Joseph E. Krakora, Public Defender, attorney for appellant (Joshua D. Sanders, Assistant Deputy Public Defender, of counsel and on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Jamie Hayes was convicted on a one-count indictment charging him with third-degree theft, N.J.S.A. 2C:20-3(a). He was sentenced to a flat five-year term of imprisonment. The conviction stemmed from defendant's theft of a woman's handbag at an arcade in Wildwood. The handbag contained her engagement and wedding rings, which defendant was later observed wearing. On appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE TRIAL JUDGE IMPROPERLY DEPRIVED [DEFENDANT] OF HIS CONSTITUTIONAL RIGHT TO COUNSEL BY DENYING THE MOTION TO RELIEVE COUNSEL.
>
> POINT II
>
> THE TRIAL COURT DENIED [DEFENDANT'S] RIGHTS OF ALLOCUTION AND PRESENCE AT HIS SENTENCING, WHICH REQUIRES A REMAND FOR A NEW SENTENCING HEARING.[1]

We reject these contentions and affirm.

---

[1] Initially, defendant raised three points but later withdrew the first point, which asserted that the trial judge deprived him of his constitutional right to represent himself at trial. Thus, we have renumbered the points for clarity.

A-2534-16T1

I.

We briefly summarize the facts from the trial record. On April 12, 2015, a woman reported to police that her handbag was stolen at Mariner's Arcade in Wildwood. According to the victim, the handbag contained her wedding and engagement rings valued at approximately $14,000, as well as an Olive Garden gift card, among other things. The arcade manager provided police with the surveillance footage from the arcade, which revealed a man leaving the arcade carrying what appeared to be a woman's handbag. Approximately one week later, the manager observed an individual he later identified as defendant on the boardwalk. Believing defendant resembled the man depicted in the surveillance footage, the manager took a photograph of defendant and provided it to police.

After seeing the photograph, Wildwood Police Officer Spencer Smith conducted an investigatory stop of defendant. At the time of the stop, defendant was "wearing two rings on his [right] pinky finger[,]" and his clothing matched that of the individual depicted in the arcade surveillance footage as well as "city surveillance footage" obtained from street cameras.[2] After confirming that the rings on defendant's finger matched the stolen rings, Smith placed defendant

_____

[2] The surveillance footage was played for the jury during the trial.

A-2534-16T1

under arrest. During a search incident to arrest, Smith found "an Olive Garden gift card . . . made out to the victim" in "[defendant's] backpack."

At trial, despite having four prior indictable convictions, defendant testified on his own behalf. Defendant admitted that he was the person depicted in the surveillance footage, but denied stealing the handbag. Defendant claimed a different woman from the victim told him she had lost her handbag and asked for his help in locating it. According to defendant, when he found the handbag and "point[ed] it out to [her,]" she rewarded him with "an Olive Garden gift card." Defendant claimed that the same woman then gave him the two rings in exchange for twenty-five dollars so that she could "get some gas."

Following the guilty verdict, the judge imposed a flat five-year prison term after finding no mitigating factors, and aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("risk that . . . defendant will commit another offense"); six, N.J.S.A. 2C:44-1(a)(6) ("extent of . . . defendant's prior criminal record and the seriousness of the offenses of which he has been convicted");[3] and nine, N.J.S.A. 2C:44-1(a)(9) ("need for deterring . . . defendant and others from violating the

---

[3] In addition to having four prior indictable convictions for weapons and drug related offenses, the judge pointed out that defendant had "[three] ordinance violations and [nineteen] disorderly persons convictions[,]" and had received probationary, county jail and State prison sentences in the past.

law"). The judge determined "by clear and convincing evidence" that "the aggravating factors substantially outweigh[ed] the lack of [any] mitigating factors[,]" and entered a conforming judgment of conviction on January 24, 2017. This appeal followed.

## II.

In Point One, defendant argues that by denying defense counsel's request to be relieved as counsel after defendant filed a complaint against him, the judge "deprived [defendant] of his federal and state constitutional rights to counsel." According to defendant, given the "per se" conflict, "[c]ounsel was forced to 'actively represent[] conflicting interests,' his and his client's." We disagree.

To lend context to the issue, we recite the pertinent procedural history of the case. Throughout the proceedings, defendant's bizarre and disruptive behavior prompted the judge to take remedial action, including ordering a psychiatric evaluation of defendant, which found him competent to stand trial, issuing an extraction order to compel his appearance in court, and, later, ordering defendant's removal from the courtroom. Defendant continuously filed civil motions and asserted that his attorney, Thomas Rossell, a pool attorney, was not representing him properly. Rossell noted that the motions filed by defendant were "under the federal statutory code[,] . . . administrative code[,] and

bankruptcy code[,]" and stated that he had "tried to explain to [defendant] that those . . . areas of law . . . carry no weight in criminal court."

On numerous occasions, defendant requested that he be allowed to represent himself, requests that were denied by the judge after questioning defendant and determining that defendant did not understand the nature and consequences of his request to waive counsel.[4]  See State v. Crisafi, 128 N.J. 499, 509-11 (1992) (outlining the topics a trial court must explore with a defendant to ascertain whether a defendant's waiver of counsel is made "knowingly and intelligently").  When the parties appeared on May 3, 2016, for a pre-trial conference, defendant's disruptive behavior continued.  In addition to speaking over the judge and the attorneys, providing non-responsive answers to the judge's questions, and refusing to sign the pre-trial memorandum, defendant renewed his request to represent himself, and, for the first time, noted that he had "a conflict of interest" with Rossell because he "already filed a complaint against . . . Rossell" in "the civil division."  In response, Rossell indicated that he could not sign the pre-trial memorandum because he had "just [seen] a lawsuit filed against [him,]" and would have to consult with superiors at the Office of

---

[4]  Defendant unsuccessfully attempted to file an interlocutory appeal of the judge's denial of his request to represent himself.

the Public Defender (OPD). After asking defendant a series of questions and receiving "[in]coherent" and "[non]responsive" answers, the judge again determined that defendant was "not capable of representing himself," and set a trial date.

Despite the impending trial date, on June 8, 2016, Rossell moved to be relieved as counsel. In a June 20, 2016 supporting certification, Rossell averred that "[he] was retained through the Public Defender's office to represent [defendant,]" but, "from the inception," defendant "has refused to listen to [his] advice and counsel[,]" and "has resorted to yelling and screaming to drown [him] out." Rossell continued that defendant has repeatedly "filed motions to represent himself[,] . . . as he has done in other jurisdictions," and "filed suit against [him] on April 27, 2016." According to Rossell, defendant's "attitude" and "refusal to assist . . . in his defense" has made it "impossible for [him] to represent [defendant]" and the lawsuit "itself preclude[d] and bar[red him] from representing [defendant] any further."

On June 27, 2016, the day trial was scheduled to commence, the judge denied Rossell's motion. The judge pointed out that Rossell had never been served with the complaint, and an "unserved" and "[un]answered" complaint was "not a legal or factual basis to relieve an attorney" who had "not even reviewed

A-2534-16T1

the contents of the complaint[.]" The judge found that defendant was "attempting to manipulate . . . , obstruct . . . , [and] delay the system[,]" but refused to allow defendant to "control [and] manipulate the process[.]" The judge noted that Rossell was defendant's second attorney assigned by the OPD, and reiterated that "[n]otwithstanding the fact that [defendant had] represented himself" before another judge, there was "nothing in this record" that supported defendant's present request for self-representation.

Following the trial, on January 23, 2017, when defendant appeared for sentencing with his newly assigned attorney, Stephen Patrick,[5] while rejecting defendant's motion for a new trial, the judge expanded on his reasons for denying Rossell's motion to be relieved as counsel. The judge noted that to support his motion, Rossell "relied on the public defender's policy" forbidding "counsel to represent defendant with an active lawsuit filed against him." However, the judge explained that he was not bound by "any policy of the public defender." Further, relying on State v. Johnson, 274 N.J. Super. 137 (App. Div. 1994), and

---

[5] Following the trial but prior to sentencing, defendant sent a letter to the judge, labeled "pro-se summery judgement [sic]," asserting that the judge violated his constitutional rights, and "seeking full criminal complaints filed" against the judge for "treason" and "[i]mpersonating an officer of the court." Defendant also requested that Patrick be "fire[d]" for "misrepresentation" and "fraud."

A-2534-16T1

State v. Biegenwald, 126 N.J. 1 (1991), the judge noted that the decision to relieve counsel was discretionary, and depended upon "considerations" such as the "proximity of the trial date, [and the] possibility of the client to obtain other representation."[6]  After "consider[ing] the proximity of the trial date, the need to control [his] calendar, [and] trial counsel's reasons for withdrawing[,]" the judge found no "reason to alter [his] decision."  The judge also stressed defendant's continuous "pattern . . . to either delay or impede" the proceedings, and explained that had he acquiesced to defendant's wishes, he would have ceded control of his courtroom to defendant, who would have undoubtedly "continue[d] to file actions[ and] lawsuits."

We agree that "[t]he decision whether to relieve counsel is committed to the sound discretion of the trial court, with a presumption against granting the request[,]" id. at 21, and a trial court has "the power to tightly control its own calendar so that the assignment of cases cannot be manipulated by the defense counsel or the defendant."  State v. Furguson, 198 N.J. Super. 395, 401 (App. Div. 1985).  However, because "[e]ffective counsel must provide the client with

_____

[6]  Previously, the judge had also denied defendant's request for an adjournment to obtain private counsel because, among other things, despite being released on bail prior to trial for over one month, defendant "made no effort" to secure private counsel and "waited until the day of trial to make th[e] request."

undivided loyalty and representation that is 'untrammeled and unimpaired' by conflicting interests[,]" conflict-of-interest claims may provide a valid basis to relieve counsel. State v. Norman, 151 N.J. 5, 23 (1997) (quoting State v. Bellucci, 81 N.J. 531, 538 (1980)). That is so because "[t]here is no greater impairment of a defendant's constitutional right to counsel than that which can occur when his attorney is serving conflicting interests. The resulting representation may be more harmful than the complete absence of a lawyer." Bellucci, 81 N.J. at 538. Thus, "it is incumbent on the courts to ensure that defendants receive conflict-free representation." State ex rel. S.G., 175 N.J. 132, 140 (2003).

Without a doubt, "[t]he paramount obligation of every attorney is the duty of loyalty to his client." State v. Cottle, 194 N.J. 449, 463 (2008). This basic maxim finds its voice in RPC 1.7(a), which provides that

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former

> client, or a third person or by a personal interest[7] of the lawyer.

Although the "personal interest" specified in RPC 1.7(a)(2) "is typically implicated when the lawyer stands to derive some benefit, in addition to a legal fee, from the matter or transaction with respect to which he or she is advising the client[,]" Kevin H. Michels, New Jersey Attorney Ethics, § 19:3-2 at 455 (2019), it has been applied in other circumstances where the benefit to the attorney was not financial in nature, or tied to the particular matter in which he or she was representing the client.

For example, in Cottle, our Supreme Court held that "an attorney who is contemporaneously under indictment in the same county as his client, and being prosecuted by the same prosecutor's office, is engaged in a per se conflict of

---

7 Our Supreme Court has noted that the "sole exception" to the rule

> is when the "client gives informed consent, confirmed in writing, after full disclosure and consultation," and even then the lawyer may represent a client only if he "reasonably believes that [he or she] will be able to provide competent and diligent representation to [the] client' and 'the representation is not prohibited by law."
>
> [Cottle, 194 N.J. at 464 (second alteration in original) (quoting RPC 1.7(b)).]

interest, absent a valid waiver by the client[,]" rendering the representation "ineffective under our State Constitution." 194 N.J. at 473. As the Court noted,

> [a] client charged with a crime places his fate in the hands of his attorney, who stands between him and the considerable power of the State—a power mostly exercised through the office of the county prosecutor. The stakes are high in a criminal case with the client's freedom often hanging in the balance. With so much on the line, an attorney's self-interest should never interfere with the duty of unstinting devotion to the client's cause. An attorney should never place himself in the position of serving a master other than his client or an interest in conflict with his client's interest. Surely, the attorney must never be perceived as having a reason to curry some personal favor with the prosecutor's office at the expense of his client.
>
> [Id. at 463-64 (citation omitted).]

Likewise, in Norman, the Court "continued to adhere" to the approach announced in Bellucci that "a per se conflict arises, and prejudice will be presumed, absent a valid waiver" where "a private attorney, or any lawyer associated with that attorney, is involved in simultaneous dual representations of codefendants[.]" Norman, 151 N.J. at 24-25. However, "[i]n all other cases, 'the potential or actual conflict of interest must be evaluated and, if significant, a great likelihood of prejudice must be shown in that particular case to establish constitutionally defective representation of counsel.'" Cottle, 194 N.J. at 467-68 (quoting Norman, 151 N.J. at 25). See State v. Bell, 90 N.J. 163, 171 (1982)

12

(holding that if "the circumstances demonstrate a potential conflict of interest and a significant likelihood of prejudice, the presumption of both an actual conflict of interest and actual prejudice will arise, without the necessity of proving such prejudice").

In State v. Davis, 366 N.J. Super. 30, 33-34 (App. Div. 2004), we considered "whether a former public defender, . . . now retained by the [OPD] as a pool attorney" to represent three defendants in separate murder-related prosecutions, "must be disqualified from that representation because he . . . sued the OPD and various former and present OPD employees alleging causes of action arising out of his employment." Noting that RPC 1.7 "govern[ed] the conflict of interest analysis in th[e] case," id. at 39, we concluded that "no actual or potential conflict exist[ed]" and that the attorney's "continuing representation [did] not violate the spirit of the Rules of Professional Conduct[.]" Id. at 48. Finding no "solid foundation . . . for any claim of disqualifying conflict of interest[,]" id. at 39, we rejected the State's concerns about the potential for ineffective assistance of counsel claims as "speculative and thus insufficient to constitute grounds for [the attorney's] disqualification." Id. at 37.

We cited with approval the district court's opinion in <u>Essex County Jail Annex Inmates v. Treffinger</u>, 18 F. Supp. 2d 418 (D.N.J. 1998). There, the court recognized that:

> Because of the virtually limitless cases in which a "conflict" may theoretically arise when a lawyer's self-interest is implicated, there is a very real danger of analyzing these issues not on fact but on speculation and conjecture. Accordingly, when a conflict of interest issue arises based on a lawyer's self-interest, a sturdier factual predicate must be evident than when a case concerns multiple representation. Only by requiring a more specific articulation of the facts giving rise to a conflict situation can courts refrain from effectively "straightjacket[ing] counsel in a stifling, redundant . . . code of professional conduct." Supposition and speculation, therefore, will simply not do.
>
> [<u>Id.</u> at 432 (first alteration in original) (citation omitted) (quoting <u>Beets v. Collins</u>, 65 F.3d 1258, 1272 (5th Cir. 1995)).]

New Jersey courts have never explicitly addressed whether a conflict of interest, per se or otherwise, arises when a criminal defendant files a civil suit against his defense attorney prior to trial. In a civil matter, a Connecticut federal district court noted "it is hard to imagine a situation presenting a greater conflict of interests than an attorney[] being sued by his client for malpractice while still serving as counsel of record in the underlying action out of which the alleged malpractice arose." <u>CP Solutions PTE, Ltd. v. Gen. Elec. Co.</u>, 550 F. Supp. 2d

298, 302 (D. Conn. 2008). The court held that "under [those] circumstances . . . , withdrawal of representation is not only warranted but required." Ibid. In contrast, in a criminal case, the Court of Criminal Appeals in Texas held that the trial court's refusal to relieve a defendant's attorney was not error where the defendant sued his third appointed counsel based on alleged violations of the Civil Rights Act after already having two prior appointed attorneys removed at his request. Perry v. State, 464 S.W.2d 660, 663-64 (Tex. Crim. App. 1971).

In reaching its decision, the Perry court compared the case to Chamberlain v. State, 453 S.W.2d 490 (Tex. Crim. App. 1970). There, the court held that the filing of a civil suit by a defendant against a judge who was to preside at that defendant's criminal trial did not require the judge to disqualify himself. Id. at 492. The court explained that "[i]f the mere filing of a civil action against the judge presiding at a criminal case would disqualify him, then any judge would be subject to disqualification at the whim of a defendant. Such practice, if allowed, could delay or prevent the trial of a case." Ibid. By analogy, the Perry court reasoned that if the trial court had allowed defendant to remove his third appointed counsel, he "could effectively delay or prevent an appeal (or trial) by filing a civil suit against his appointed counsel." 464 S.W.2d at 664.

Here, we are satisfied that while there was a potential conflict of interest created by defendant's unserved complaint against Rossell, there was an insufficient factual predicate to establish significant likelihood of prejudice to defendant. Further, there was no significant risk that Rossell's representation of defendant would be materially limited by his personal interest in violation of RPC 1.7(a)(2). As we noted in Davis, Rossell's representation would have been enhanced, rather than limited, because providing substandard performance "would be contrary to his personal interest, since such conduct could provide evidence to support" any related lawsuit. 366 N.J. Super. at 41.

Thus, we discern no abuse of discretion in the judge's denial of Rossell's motion to be relieved as counsel. As the judge explained and as the Perry court expounded, relieving Rossell in the circumstances of this case would have ceded control of the proceedings to defendant, who continued to file frivolous applications against the judge and his newly assigned attorney even after he was convicted. We agree with the judge that defendant's pattern evinced a motive to manipulate, obstruct, and delay the proceedings, a practice that cannot be countenanced for this or any defendant. Inherent in a trial court's "power to tightly control its own calendar" is discretion to avoid "manipulat[ion] by the defense counsel or the defendant." Furguson, 198 N.J. Super. at 401. Moreover,

there is no indication in the record that Rossell failed to zealously defend defendant, despite the difficult circumstances defendant created.[8]

## III.

In Point Two, defendant argues the judge "unconstitutionally denied [him] his right of allocution" by "remov[ing him] from the courtroom" after "a disagreement" with his attorney and "then sentence[ing him] in absentia." Defendant asserts a remand for resentencing is required to allow him "to complete his allocution of reasons to mitigate his sentence." We disagree.

On January 23, 2017, defendant appeared for oral argument on a motion for a new trial filed by Patrick, his third assigned counsel, and for sentencing in the event he did not prevail on the motion. During the proceeding, defendant continued his disruptive behavior by engaging in a largely unintelligible rant during which he objected to the proceedings, objected to the court's jurisdiction over him, and objected to Patrick's representation,[9] claiming he had filed a

---

[8] In addition to objecting to a technical amendment of the indictment, challenging discovery violations, interposing various evidentiary objections, and subjecting the State witnesses to grueling cross-examination, Rossell moved for a judgment of acquittal, pursuant to Rule 3:18-1, both at the close of the State's and the defense's case.

[9] Among other things, defendant accused Patrick of "committing treason" and "paper terrorism" and of "violating the Peace and Friendship Treaty of 1778."

complaint against Patrick in 2007 notwithstanding the fact that he had never served Patrick with the complaint. When defendant failed to heed the judge's warning and persisted in interrupting counsel and the court, the judge excused defendant from the proceeding for being "disruptive and disrespectful to the [c]ourt and to counsel." Citing Illinois v. Allen, 397 U.S. 337 (1970), the judge noted there were "at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant," including "bind[ing] and gag[ging]" the defendant, "citing him for contempt[,] or taking him out of the courtroom until he promises to conduct himself well." The judge elected the latter approach, noting that when he "asked [defendant] if he wanted to leave," defendant "rambled" and continued his disruptive behavior. Thus, the judge concluded defendant was "attempt[ing] to obstruct and impede the orderly proceeding of the court[,]" and had him removed.

After denying the new trial motion, the judge moved on to sentencing. Initially, the judge rejected the State's application for the imposition of a discretionary extended term sentence, notwithstanding defense counsel's

Defendant also objected to the arguments contained in Patrick's brief, submitted in support of the motion for a new trial, despite the fact that one of the six points raised as erroneous was the judge's denial of Rossell's motion to be relieved as counsel.

acknowledgement that defendant qualified as a persistent offender. See N.J.S.A. 2C:44-3(a). Thereafter, the judge granted a brief recess to allow Patrick to review the pre-sentence report with defendant, discuss the sentencing parameters, and elicit defendant's "thoughts about sentencing[.]" When Patrick returned, he reported to the judge that defendant had no thoughts about sentencing. According to Patrick, defendant "looked at a couple . . . pages" of the pre-sentence report and said "well this does[ not] address all the issues I want raised." Patrick added defendant "had nothing to say except what he[ had] said here before[,]" and "broke off the conversation," leaving defendant "to bang his head." The judge was later advised that defendant was returned to the county jail after he "started banging his head against the holding cell w[a]ll."

At a sentencing hearing, a defendant has the right to be "present[,]" R. 3:21-4(b), and "the right to allocute, that is to address the court directly, in connection with his or her sentence." State v. Blackmon, 202 N.J. 283, 297-98 (2010) (citing State v. Cerce, 46 N.J. 387, 393-95 (1966)); see R. 3:21-4(b). "That right is well-established and has been embodied in our Court Rules." Id. at 298. "As such, Rule 3:21-4(b) requires the sentencing court to inquire specifically of a defendant whether he or she wishes to speak on his or her own behalf to present information in mitigation of the punishment." Ibid. "The

19

defendant may answer personally or by his or her attorney."  R. 3:21-4(b).

Indeed, "[s]entence shall not be imposed unless the defendant is present or has

filed a written waiver of the right to be present."  Ibid.

Additionally, Rule 3:16(b) provides:

> The defendant shall be present at every stage of the trial, including . . . the imposition of sentence, . . . . Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present . . . . A waiver may be found either from (a) the defendant's express written or oral waiver placed on the record, or (b) the defendant's conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court or has signed a written acknowledgement of the trial date, or (2) trial has commenced in defendant's presence.

"[W]here there is no express waiver, the touchstone is whether a defendant's

conduct reveals a knowing, voluntary, and unjustified absence."  State v. Luna,

193 N.J. 202, 210 (2007).

In addition to a defendant's right to waive his or her presence, a court is

free to remove a disobedient or belligerent defendant from the courtroom to

maintain order and decorum.  See State v. Spivey, 122 N.J. Super. 249, 255-56

(App. Div. 1973) (discussing Allen, 397 U.S. at 343, where the Supreme Court

stated that "trial judges confronted with disruptive, contumacious, stubborn,

defiant defendants must be given discretionary power to meet the circumstances

20

of a case" and might bind and gag a defendant, hold the defendant in contempt of court, or remove the defendant from the courtroom), rev'd on other grounds, 65 N.J. 21 (1974)). Thus, "[t]he right to be present at trial [, including sentencing,] is not absolute." Luna, 193 N.J. at 210.

Applying these principles, we are satisfied that the judge's removal of defendant from the courtroom during the sentencing hearing was justified. Throughout these proceedings, defendant persistently interrupted the court, talked over his attorneys, demeaned his own counsel, and disparaged the court's authority. Faced with these continuous disruptions, the judge opted to remove defendant from the courtroom rather than the more extreme remedies of binding and gagging him or holding him in contempt of court. When given the opportunity to conform his behavior so that he could return to the courtroom, or "present . . . information in mitigation of punishment" to his attorney to relay to the judge as permitted under Rule 3:21-4(b), defendant banged his head against the holding cell wall, prompting his return to the county jail.

We find no error in the judge's response to defendant's continuous unruly behavior and no basis to intervene. As recognized by the Allen Court:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary

21

standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

[397 U.S. at 343.]

Here, we find no fault and no abuse of discretion in the manner in which the judge responded to defendant's disruptive behavior during the sentencing hearing and throughout the entire proceeding. Moreover, defendant's sentence is amply supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION