117 N.J. Super. 26 (1971)
283 A.2d 537
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EARTHA PUGH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 20, 1971.
Decided October 29, 1971.
*28 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Gerald T. Foley, Jr., Deputy Public Defender, of counsel and on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for respondent (Mr. David S. Baime, Assistant Prosecutor, of counsel).
The opinion of the court was delivered by LANE, J.A.D.
Defendant appeals from a judgment of conviction of murder of Leon Fort entered upon his plea of non vult. On May 10, 1967 he was sentenced to the New Jersey State Prison for life. For sufficient reasons, on May 10, 1971 we granted leave to file a notice of appeal as within time.
The Public Defender argues on behalf of defendant that his sentence was manifestly excessive. In a pro se brief defendant argues that he was deprived of due process because the trial court failed to hold a hearing to determine that he was competent to stand trial and failed to hold a hearing to determine that he was competent to enter a plea of non vult. Defendant also argues that in fact he was not competent to stand trial because he had no memory of the events leading to and at the time of the killing. Additionally, he contends that the plea of non vult was not voluntary.
In three separate indictments defendant was indicted for the murder of Leon Fort, the murder of Julius Ravin and an atrocious assault and battery upon George Ivory, all committed at or about the same time on November 12, 1965. The indictments were filed January 15, 1966. On January *29 31, 1966 defendant, represented by competent counsel, pleaded not guilty. The indictments were assigned for trial on May 16, 1966. On May 23, 1966 during the course of the trial the court declared a mistrial based upon reports from defendant's and the State's psychiatrists that he was suffering from chronic brain syndrome with psychotic reaction. He was transferred to the New Jersey State Hospital where he remained until discharged December 9, 1966.
The indictments were again set down for trial on April 3, 1967 before the same judge. Before the jury was selected defendant retracted the plea of not guilty and pleaded non vult to the indictment charging the murder of Leon Fort. Subsequently, the other two indictments were dismissed. Criminal Procedure Form 13A had been completed by defendant. When the trial judge addressed defendant as to whether he was asking the court to accept the plea of non vult and whether he understood what the court was saying to him, defendant replied, "Not exactly good, sir." The question was put to defendant in a simpler form. He said that he did understand it. When asked whether he understood that the effect of the plea of non vult was the same as the effect of the plea of guilty, defendant replied, "All I understand is what my lawyer told me." When asked whether his plea was being voluntarily made, he said, "Yes, just like what my lawyer tells me." Later in the hearing the following occurred:
THE COURT: You are doing it only because you want to do it?
DEFENDANT PUGH: Only because what my lawyer told me.
THE COURT: You want to do it after consultation with your lawyer?
DEFENDANT PUGH: After I talked with my lawyer.
Defendant did say that he understood what he was doing after his lawyer had explained it to him.
At the sentencing his attorney advised the court that after defendant was released from the State Hospital, he *30 was examined by the state psychiatrist and by a neurologist and a psychiatrist on his own behalf and judged to be competent to stand trial. When the court asked defendant whether he understood that the effect of the plea of non vult was to admit the charge, the defendant did not know what "admit" meant. He further said as to the incident, "I don't know what happened." Defendant said that he was doing "what my lawyer said."
Defendant's attorney advised the court that he had seen signed statements obtained by the State from persons who witnessed the event. Although the attorney represented to the court that he was unable to get any information about the incident from defendant because of his alleged lack of memory, the trial judge did not believe that there was in fact a lack of memory. He stated on the record that he thought defendant was "trying to play fast and loose with me."
The presentence report showed that defendant was 44 years old, married, with six children ranging in age from 8 through 20. The report contains a statement of defendant in which he outlined in detail the circumstances of the incident. The arrest record shows a number of minor violations plus a conviction in 1959 for the unlawful use of a dangerous weapon and a conviction in 1965 for assault and battery on a special police officer.

I
Defendant argues that the trial court's failure to hold a hearing on his competency to stand trial or enter a non vult plea was a denial of due process.
A defendant cannot be put to trial if he has a condition of mental illness or retardation which prevents him from rationally comprehending his position and from consulting with counsel in the preparation of his defense. Pate v. Robinson, 383 U.S. 375, 377, 86 S.Ct. 836, 838, 15 L. Ed 2d 815, 817 (1966); Dusky v. United States, 362 U.S. 402, *31 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960); State v. Caralluzzo, 49 N.J. 152, 153 (1967); State v. Lucas, 30 N.J. 37, 72 (1959). If the court either before or during the trial has facts brought to its attention which raise a bona fide doubt of the condition of defendant's mind affecting his ability to comprehend his position or to assist in his defense, the question should be settled before proceeding further. State v. Lucas, supra, 30 N.J. at 73; State v. Auld, 2 N.J. 426, 435 (1949); State v. Peacock, 50 N.J.L. 34, 36 (Sup. Ct. 1887), rev'd on other grounds 50 N.J.L. 653 (E. & A. 1888). Before Pate v. Robinson, supra, 383 U.S. 375, 86 S.Ct. 836, our Supreme Court had said that while a court has the power to order an inquiry into the defendant's mental qualifications to stand trial, failure to exercise the power will not be reviewed on appeal unless it clearly and convincingly appears that the defendant was incapable of standing trial. State v. Lucas, supra, 30 N.J. at 73. It is now a constitutional mandate that a state court hold a hearing on a defendant's competency to stand trial where the evidence raises a bona fide doubt as to such competency. Pate v. Robinson, supra, 383 U.S. at 385, 86 S.Ct. 836.
The facts in this case do not indicate a bona fide doubt as to whether defendant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. They do not indicate a bona fide doubt as to whether he had a rational as well as factual understanding of the proceedings against him.
At the entering of the plea of non vult counsel for defendant stated to the court:
Your Honor, I have discussed with the defendant, explained to him, the prospects of pleading to one indictment, Indictment No. 818. I have explained to him the sentence possibilities and probabilities. I believe he understands them. He has filled out the Form 13-A. I have explained each question and answer to him and he has signed it.
*32 Defendant is mildly retarded, with an I.Q. of 71. Apparently while in the military service he received a head injury. At the sentencing proceeding defendant told the court that he did not know what happened on the day of the killing because he had been hit in the head. When defendant entered his plea of non vult, the court repeatedly asked defendant if he understood the charges against him and knew what he was doing. Defendant's response was that he understood what he was doing after his lawyer had explained the plea to him. At the sentencing the court again asked defendant if he understood the charges. The defendant at first responded that he did not know what happened at the time the crime occurred. He then was asked whether he knew a plea of non vult had the effect of admitting the truth of the charges. His response was that his lawyer explained the plea to him and he understood it as his lawyer had explained it and he followed his lawyer's advice.
It is clear from the record that although defendant found it difficult to understand certain phraseology, he did understand when simpler words and sentence structure were used. There is nothing to indicate that defendant could not reasonably comprehend his position and consult with his lawyer.
Federal courts have held that a judicial determination of mental competency to stand trial is required when there has been an earlier judicial determination of incompetency and no subsequent judicial determination of competency. Kelley v. United States, 95 U.S. App. D.C. 267, 221 F.2d 822, 824 (1954); Gunther v. United States, 94 U.S. App. D.C. 243, 215 F.2d 493, 496 (1954); Contee v. United States, 94 U.S. App. D.C. 297, 215 F.2d 324, 328 (1954). Before the second trial, at defense counsel's request defendant was examined by a psychiatrist and a neurologist and judged to be competent to stand trial. In addition the staff of the State Hospital and the state psychiatrist found defendant competent to stand trial. Defense counsel had informed the court at the sentencing that a neurologist and a psychiatrist *33 had found defendant competent to stand trial. In addition at the time of sentencing, the court said that it had had the benefit of defendant's presentence report. That report contained the opinion of the State's psychiatrist given after defendant had been released from the State Hospital and returned to the Essex County Jail finding defendant competent to stand trial.
We have carefully reviewed pertinent records of the New Jersey State Hospital and the medical reports submitted by the State's psychiatrist and by the defendant's psychiatrist and neurologist.
The hospital record contains a notation of an examination on November 28, 1966. At that time the doctor stated, "The patient was seen as knowing sufficient details of his offense, had knowledge of his legal rights and the functions of the court and it appears that at this time, he is capable of assisting his attorney and following his advice." The staff of the New Jersey State Hospital concurred in that finding. On December 1, 1966 the chief executive officer of the New Jersey State Hospital reported to the court that defendant was free of the symptoms which required his commitment and was "able to consult with counsel, assist in the preparation of his defense [and] participate in a trial."
The state's psychiatrist who examined defendant on March 29, 1967 concluded that he was able to understand the nature and quality of his behavior at the time of the offense, that he could cooperate with counsel in his own behalf and that he was capable of standing trial. The neurologist who examined on April 4, 1967 at the request of defense counsel concluded that defendant was not suffering any psychotic reaction and that he was able to cooperate with counsel. The psychiatrist who examined defendant at the request of defense counsel concluded, "On this occasion, he was found to be in good touch with his surroundings, correctly oriented in all spheres, displaying no evidences of any hallucinations, delusions or paranoid trends. He was *34 considered to be wholly competent and able to assist in his own defense and consult with his counsel."
There was nothing before the court at the time the trial began or when the plea was accepted that would raise a bona fide doubt of the competency of the defendant to stand trial or to enter a plea of non vult. It is perfectly apparent that defendant's counsel fully investigated the possibility of raising such issue. He concluded, and we believe rightfully, that there was no evidence to support any such contention.
There was no error in the failure to hold a hearing. State v. Hale, 116 N.J. Super. 106, 119 (Law Div. 1971); United States ex rel. Roberts v. Yeager, 402 F.2d 918 (3 Cir.1968). Cf. Whalem v. United States, 120 U.S. App. D.C. 331, 346 F.2d 812, 817, cert. den. 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed. 2d 100 (1965).

II
Defendant contends that he was incompetent to stand trial because he did not remember shooting anyone. The trial judge did not believe his statement to that effect. Our examination of the record convinces us that the trial judge was completely justified in reaching that conclusion.
Defendant signed a statement November 12, 1965 setting forth in detail exactly what happened at the time of the killings. A note in the hospital record under date of May 30, 1966 states, "He states that the argument pursued over change of a fifty dollar bill and this was the cause of the shooting episode. He claims he does not remember exactly what happened." (Emphasis added). The report of the psychiatrist engaged by defense counsel states in part:
He related that he has been lodged in jail since (about) November 12, 1965, on a charge of "Murder." He related that four or five days prior to that he had purchased a new 12-gauge bolt-action shotgun at Sears Roebuck, because his old gun was broken, and used this to go hunting; that for those several days wherein there were no *35 jobs out of the Union Hall he had gone hunting with several different companions on separate days; that on some of those occasions it was down on Route 27 below New Brunswick. He also advised that on the morning of November 12, after checking in at the Union Hall and being advised by the Steward not to take a job that was available and to wait for a better one, he then invited several of his friends to go hunting but found that none could go that day. As a consequence, he joined a companion and then went to this man's house and several other places for drinks  but the details of where they went and what they consumed was rather hazy. He does recall, however, going to the Cotton Club and eventually becoming involved in an argument with "Shaky" over paying for his drinks with a $50 bill and that, consequently, after the argument went on for some time, Shaky struck him on the back of the head with a billyclub. Following that, he admitted that he was quite angry with Shaky, left the club, went out to secure the shotgun out of his car, and sometime later (the exact time was not certain, but he estimated it at about twenty minutes) he went seeking out Shaky in the liquor store next door and fired the gun at a person that he thought was Shaky. He was still quite disturbed to find that it was his good friend, "Yuddi." (Presumed to be Julius, the owner of the club.) Then with patient effort, he was able to recall that he did re-enter the club and pursue Shaky by firing the shotgun twice until the latter fell to the floor. He then recalled other factors as he left the club and was pursued by somebody until apprehended by the police. He was able to recall fairly accurately the fact that they took him to police headquarters, obtained a statement, and, subsequent to that, he was taken to the hospital to have his head laceration repaired; finally, he vividly recalled speaking with you, as his attorney, and providing a more detailed and complete account of the events which led up to his incarceration.
Even if in fact defendant did not remember the details of the crime, he would still be competent to stand trial. Amnesia concerning the crime does not bar prosecution. United States v. Sullivan, 406 F.2d 180, 185-186 (2 Cir.1969); Arizona v. McClendon, 103 Ariz. 105, 437 P.2d 421 (Sup. Ct. 1968); Reagon v. State, 251 N.E.2d 829, 831 (Ind. Sup. Ct. 1969), cert. den. 397 U.S. 1042, 90 S.Ct. 1364, 25 L.Ed.2d 653 (1970); Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 218 A.2d 758 (Sup. Ct.), cert. den. 385 U.S. 869, 87 S.Ct. 136, 17 L.Ed.2d 96 (1966). Cf. State v. Pacheco, 106 N.J. Super. 173, 177-180 (App Div. 1969), aff'd o.b. 54 N.J. 579 (1969), cert. *36 den. 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 65 (1970). Compare, Wilson v. United States, 129 U.S. App. D.C. 107, 391 F.2d 460 (1968). A contrary rule would unduly hamper the State's interest in the prosecution of violators of its criminal laws and jeopardize the safety and security of other citizens. "A defendant is competent to stand trial if he can comprehend his position and consult intelligently with counsel in the preparation of his defense." State v. Sinclair, 49 N.J. 525, 549 (1967). Amnesia concerning the crime does not render a defendant unable to comprehend his position or to consult intelligently with counsel in the preparation of his defense.
Defendant argues that the plea of non vult was not voluntary and therefore invalid. Defendant completed Criminal Procedure Form 13A which contains questions designed to ascertain defendant's understanding of the charge against him and the consequence of the plea. N.J.S.A. 2A:113-3 provides for a plea of non vult to a charge of murder. R.R. 3:5-2(a) (now R. 3:9-2) in effect at the time of defendant's plea provided that a defendant may plead non vult for a crime punishable by death. The court may refuse to accept a plea of non vult and shall not accept it without first addressing the defendant personally and determining by inquiry that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. Although not specifically required by R.R. 3:5-2(a), the court must also determine that there was a factual basis for the plea. State v. Deutsch, 34 N.J. 190, 201 (1961). On an application to withdraw a non vult plea, the execution of Form 13A weighs heavily against a contention that the plea was not entered voluntarily and understandingly. It is not conclusive. State v. Herman, 47 N.J. 73, 77 (1966); State v. Deutsch, supra, 34 N.J. at 201.
It cannot be said that defendant was coerced into pleading non vult. At the time of the plea and sentencing *37 defendant's lawyer was with him. The trial court before accepting defendant's plea and again before sentencing fully interrogated defendant and his counsel to make certain defendant knowingly executed Form 13A and fully understood the nature of the charge and the consequence of his plea. While defendant indicates that he was following the advice of his attorney, it is clear from the transcripts of the hearings that he understood the nature of the charge and the consequence of his plea. There is no indication that he was coerced into pleading non vult.

IV
Defendant's last argument is that the sentence was excessive. While the appellate court has the power to review and modify sentences, such power must be exercised with extreme care. The court will overturn a sentence only upon a clear showing it was unduly punitive or there was an abuse of discretion by the sentencing judge. State v. Brown, 46 N.J. 96, 108 (1965); State v. Provoid, 110 N.J. Super. 547, 559 (App. Div. 1970). The burden of persuasion is on defendant. State v. Cox, 101 N.J. Super. 470 (App. Div. 1968), certif. den. 53 N.J. 510 (1969).
N.J.S.A. 2A:113-3 provides that if a plea of non vult on a murder charge is accepted, the sentence imposed shall be either imprisonment for life or the same as that for murder in the second degree (not more than 30 years).
Defendant argues that since he could not remember the shooting, all the elements of murder in the first degree were not present and consequently the court could not impose a life sentence. We have pointed out above that this argument is fallacious. Defendant has not shown that the sentence was an abuse of discretion.
The judgment of conviction is affirmed.