TYSON, Judge.
On August 5, 1983, Floyd Jay Ponder was indicted for the intentional murder of one Billy Rae Ramey, in violation of § 13A-6-2, Code of Alabama. The case went to trial and the appellant was found “guilty of murder” and sentenced to life imprisonment. His conviction was reversed by this court in Ponder v. State, 451 So.2d 1382 (Ala.Crim.App.1984).
On retrial, the appellant was again found “guilty of murder” and sentenced to life imprisonment.
At approximately 10:00 p.m. on the night of June 21, 1983, the appellant and the victim went to the residence of the victim’s brother, Donald Ramey. They told Donald Ramey that they came to bring him a drink and they had a half-gallon bottle of whiskey. Both the victim and the appellant were intoxicated. At this point, they went into the master bedroom where they found Jane Ramey, Donald’s wife, and Stacy Ma-han, Donald’s stepdaughter. The adults began to drink the whiskey. Donald Ra-mey went to the store to get some cokes with which to chase the whiskey, and when he returned, the drinking continued.
During this time, the appellant boasted about how tough he was and that he could “whip” both the victim and Donald Ramey. At one point he pulled his knife out and passed it around.
The victim, who was not a big drinker, became sick and his brother took him outside. When they came back inside the victim passed out on the bed. A short while later the appellant wanted to go home and became belligerent when Donald Ramey told him to leave without the victim. The appellant then left the house and Donald Ramey followed him outside. Once outside, the appellant pulled a knife on Donald Ramey and threatened him. Donald Ra-mey ran for a while and, when he started back to the house, he saw his daughter who told him that the appellant had hurt the victim. When Donald Ramey got back to the house, he saw the appellant driving away in his car.
Jane Ramey testified that, soon after the appellant and her husband went outside, she heard footsteps. She assumed that it was her husband. She was still sitting on the bed next to the victim when she heard a thud. She looked and saw the appellant’s fist in the middle of the victim’s chest. She told her daughter to run and then the appellant left.
After Donald Ramey saw his brother was hurt, he went to a neighbor’s house to call an ambulance and the police. The victim was pronounced dead at the hospital.
After the appellant left the Ramey residence he went to his brother-in-law’s house. James Kenneth Boyd testified that the appellant said he was in trouble and needed money. Boyd gave the appellant $1.00 and he left.
Next, the appellant went to Jerry Gil-breath’s house. He told Gilbreath that he had whipped three people and cut two people. He asked Gilbreath to take him to his sister’s. The appellant left his car at Gil-breath’s. On the way to the appellant’s sister’s house, a sheriff’s car passed. The appellant asked Gilbreath if the sheriff’s car had stopped.
When the appellant got to his sister’s house, he said he had been in a fight and asked to borrow her car. The appellant was arrested shortly thereafter.
I
The appellant contends that a knife [i.e., allegedly the murder weapon], which was found in the appellant’s car, should not have been admitted into evidence because the State failed to establish a proper chain of custody.
*693 Ed Lee, an investigator with the Cullman County Sheriffs Office, testified that he removed this knife from the appellant’s car during the early morning hours of June 22, 1983. He put his markings on the knife and placed it in a sealed evidence bag. The next day he gave this evidence bag to Dr. Aguilar of the Department of Forensic Sciences.
Dr. Aguilar stated that, after he received the evidence bag from Lee, he opened it, examined the knife and resealed the bag and gave it to Rodger Morrison.
Morrison, a criminalist with a specialty in forensic serology, testified that, when he received the evidence bag, he unsealed it and performed some tests on the knife. He then put the knife back into the bag and gave it to Dennis Spradlin of the Cull-man County Sheriffs Department.
The appellant now asserts that his case should be reversed because Spradlin failed to testify that, after receiving the bag containing the knife from Morrison, it was in his possession until he brought it to court for this trial. We do not agree.
“The general rule is that to establish a sufficient predicate for the admission into evidence of an item, it must be shown that there was no break in the chain of custody. Whetstone v. State, 407 So.2d 854 (Ala.Cr.App.1981).
“However, to warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability that the object is the same as, and not substantially different from, the object at the commencement of the chain. Sexton v. State, 346 So.2d 1177 at 1180 (Ala.Cr.App.1977), and eases cited therein.”
Sims v. State, 428 So.2d 162 (Ala.Crim.App.1982), cert. denied, 428 So.2d 162 (Ala.1983).
Immediately prior to the knife’s admission into evidence, Lee testified that the knife was in the same condition as when he removed it from the appellant’s car. The appellant does not contend that the knife was altered or tampered with in any way and it is not necessary for the State to rebut this contention. Willis v. State, 441 So.2d 1030 (Ala.Crim.App.1983); Tate v. State, 435 So.2d 190 (Ala.Crim.App.1983).
Therefore, we find that the testimony concerning the chain of custody with regard to the knife was sufficient to justify its admission into evidence.
II
The appellant asserts that, due to his intoxication on the night of the murder, he was unable to form the requisite intent necessary to commit murder. Therefore, he alleges that his motions for judgment of acquittal and for a new trial were improperly denied.
“ ‘Voluntary drunkenness’, as here in-' volved, ‘does not excuse crime, but its excessiveness may produce such a mental condition as to render intoxicated persons incapable of forming a specific intent, and, when intent is an essence of the crime, drunkenness as affecting mental state is a question for the jury. * * ’ Dyer v. State, 241 Ala. 679, 4 So.2d 311.”
Stringer v. State, 53 Ala.App. 88, 297 So.2d 411 (1974). See also Lee v. State, 439 So.2d 818 (Ala.Crim.App.1983).
While there was ample evidence presented at trial that the appellant was intoxicated on the night of the murder, there was also evidence that the appellant was not so drunk that he did not know what he was doing that night. We find that the jury properly resolved this issue against the appellant and the trial judge’s denial of the appellant’s motions was therefore proper.
III
Before the trial of this case, defense counsel filed a special plea of insanity alleging that his client “... That he is unable to assist his Attorney in the preparation of a defense, because of amnesia he is unable to remember the events for which he is charged.” (R.365).
*694 Defense counsel claims that the trial judge’s refusal to order a psychiatric examination of the appellant and a “bifurcated hearing” to determine his competency was error.
If a trial judge has reasonable grounds to doubt an accused’s competency to stand trial, he must initiate an investigation into the sanity of the accused. Ex Parte LaFlore, 445 So.2d 932 (Ala.1983).
An investigation is only necessary when there is sufficient doubt as to the accused’s competency. Gales v. State, 338 So.2d 436 (Ala.Crim.App.), cert. denied, 338 So.2d 438 (Ala.1976); Thomas v. State, 357 So.2d 1015 (Ala.Crim.App.1978).
The question that we must decide is whether or not there was sufficient evidence to doubt the appellant’s competency to stand trial. To answer this question, we must examine the entire record. After reviewing this record, we can find nothing that indicates that the appellant was not competent to stand trial. Even the appellant’s claim that his alleged amnesia rendered him incompetent to stand trial is an issue which has been determined adversely to this appellant. See Davis v. State, 354 So.2d 334 (Ala.Crim.App.1978).
In light of the above discussion, the appellant was not entitled to a psychiatric examination. Gales, supra.
The trial judge correctly decided these matters. Thomas, supra.
For the reasons shown, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.