229 N.J. Super. 288 (1988)
551 A.2d 207
STATE OF NEW JERSEY, PLAINTIFF,
v.
CHRISTOPHER J. BADGER, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided October 13, 1988.
Denyse Coyle Galda for plaintiff.
Daniel Baer for defendant.
*289 KUECHENMEISTER, J.S.C.
This case presents a novel issue in New Jersey: whether a person who suffers a multiple-personality disorder is mentally competent to stand trial for a crime committed by a personality other than the dominant one.
On May 1, 1986, Christopher Badger was arrested for attempted burglary of a home in Hackensack, New Jersey. Badger was apprehended in a garage near the scene. At the scene, a screen door was found cut open and "pry" marks were found on the cellar door. Further, a pocket knife was found on the ground by the screen door. This incident occurred just one day after Badger had been released from Southern State Correctional Facility, where he had been serving a seven-year sentence on similar charges.
Badger has been institutionalized for the major part of his life. Since the age of 17, Badger has been diagnosed as suffering from multiple-personality disorder. Badger describes his disease in terms of "lost time." That is, when one of Badger's alternate personalities[1] takes control, Badger has no recollection of what has transpired. He is only aware that he has "lost time." Yet, when one of the alternate personalities is in control, that "person" can remember, quite clearly, what transpired during the time that "person" was in control.
On the night of the alleged attempted burglary, "Philip" was in control of Badger. Badger's dominant personality, "Christopher," has no recollection of any of the events of that evening. "Philip" remembers and can relate what occurred on that evening. "Christopher" analogizes his memory of "Philip's" actions to having amnesia. Further, "Christopher" cannot control the actions of "Philip" nor can he control the "switching" of his personalities.
*290 Badger has been incarcerated since his arrest for the crime charged. In January 1987, he was admitted to the forensic unit of the Bergen Pines Hospital for attempting to hang himself while in jail. At Bergen Pines, Dr. Peter Martindale evaluated Badger over a period of five months. He found that Badger genuinely suffered from a multiple-personality disorder which was not brought on as an attempt to escape punishment for his crimes. Martindale found Badger to have two distinct, competent personalities  one of "Christopher" and the other "Philip"  each of whom, Martindale believed, knew right from wrong.
On August 10, 1987, Badger was found mentally incompetent to stand trial and was committed to Greystone Psychiatric Hospital. On November 4, 1987, Badger was again evaluated by doctors at Greystone who found him to be organized, coherent and non-delusional although "Christopher," himself, still expressed some concern over "losing time." Thereafter, Badger was found mentally competent, despite his multiple-personality disorder, to stand trial for the alleged attempted burglary.
Pursuant to N.J.S.A. 2C:4-5, this court then ordered Badger to be re-evaluated by Dr. Steven S. Simring. The doctor was asked to make specific findings regarding Badger's mental competency to stand trial as prescribed by N.J.S.A. 2C:4-4b, which provides that:
b. A person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
(1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
(2) That his elementary mental processes are such that he comprehends:
(a) That he is in a court of justice charged with a criminal offense;
(b) That there is a judge on the bench;
(c) That there is a prosecutor present who will try to convict him of a criminal charge;
(d) That he has a lawyer who will undertake to defend him against that charge;
(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;

*291 (f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead guilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and
(g) That he has the ability to participate in an adequate presentation of his defense.
Simring, thus, concluded, that:
The patient has a good understanding of the charges against him, and is aware of the facts of his arrest from his discussions with the counsel and his review of the discovery. The patient understands the pleas available to him, and the penalties that can result from a conviction. He is able to name his current attorney and his previous one, and fully understands that function of counsel. He understands the roles of the prosecutor, the judge and the jury. He displays a sophisticated understanding of trial procedure.
The patient clearly understands the meaning of plea negotiations, and understands the implications of the plea that has been suggested for these charges. He is able to accurately explain to me the history of his recent competency hearings, and the disputes among the experts.
There is no question that this intelligent young man would be competent to proceed to trial under the guidelines of Section 2C:4-4 by the usual criteria embodied in that statute. His only claim is that, based on his multiple personality disorder, he has complete amnesia for the incident itself, and cannot therefore fully cooperate with counsel in the preparation of his defense.
Based on Simring's conclusions, this court found Badger competent to stand trial for the alleged crime.
The defense then brought a motion to consider the question of Badger's sanity at the time the offense was committed. At the hearing, no conclusive proof was offered regarding Badger's sanity at the time of the offense. Dr. Peter Martindale of Bergen Pines Hospital was then asked to evaluate Badger's mental competency to stand trial within the criteria enumerated in N.J.S.A. 2C:4-4b. Martindale expressed some hesitancy about Badger's mental competency to stand trial. Specifically, Martindale found that, although both "Christopher" and "Philip" each understand the difference between right and wrong, and each personality would understand that "he" was involved in a legal proceeding, only "Philip" will be able to relate the events of May 1, 1986 to his attorney, and therefore, only "Philip" could properly assist his attorney in his defense. Also, based on his evaluation of Badger's personality disorder, Martindale *292 expressed concern that "Christopher" may switch to "Philip" at any time during the judicial proceeding, in which case, "Philip" would have no idea of what had transpired just prior to the switch and vice versa. Martindale, therefore, found Badger incompetent to stand trial and did not feel Badger would become competent at any time in the near future.[2]
This court then reserved decision to again evaluate Badger's overall competency to stand trial.
Evaluating this case under the standards for competency to stand trial enumerated at N.J.S.A. 2C:4-4b, we find that defendant "has the mental capacity to appreciate his presence in relation to time, place and things." While "Christopher" and "Philip" each have no recollection of the events that occur when the other personality is in control, both of the psychiatrists agree that "Christopher" and "Philip" are each aware of their surroundings and appreciate their situation in relation to time and things. The only problem with this appears to be when "Christopher" switches to "Philip" and vice versa. However, this problem, should it occur during trial, can be overcome by having defendant's attorney explain to him what has occurred just prior to the personality change.
This court further finds that defendant, whether he is "Christopher" or "Philip" at the time of trial, will be able to comprehend that: he is in a court of justice, charged with a criminal offense; there is a judge on the bench; there is a prosecutor present who will try to convict him; he has a lawyer who will defend him; he must tell the truth if he chooses to testify; there is or may be a jury present to decide his guilt or innocence; he may enter plea negotiations since he comprehends the consequences of a guilty plea. The only difficult *293 question before this court is whether defendant's personality disorder will render him unable to participate in an adequate presentation of his defense.
New Jersey has no case law on the issue of multiple-personality disorders as it relates to mental competency to stand trial. However, New Jersey has flatly refused to allow amnesia concerning a crime to be a bar to prosecution. State v. Pugh, 117 N.J. Super. 26, 35 (App.Div. 1971). The court in Pugh held that "a contrary rule would unduly hamper the State's interest in prosecution of violators of its criminal laws and jeopardize the safety and security of other citizens." Id. at 36 The court further found that amnesia would not "render a defendant unable to comprehend his position or to consult intelligently with counsel in preparation of his defense". Ibid.
Some ten years prior to the decision in Pugh, a study entitled "Amnesia: A Case Study in the Limits of Particular Justice," 71 Yale L.J. 109 (1961), found that
[o]nce it is recognized that amnesia is present to some degree in everyone and that its effects on the ability of an individual to assist in his own defense are often hard to distinguish from the disadvantages of many defendants to whom important facts are unavailable for reasons other than amnesia, it should be apparent that it is neither necessary nor appropriate to consider memory failure as a sufficient condition for the interruption of the adjudicatory process to minimize the danger of a miscarriage of justice. [117 N.J. Super. at 136]
This court is persuaded that the condition of amnesia is sufficiently similar to the situation of a person suffering from multiple-personality disorder, that the same principles should apply.
Here we are faced with a defendant who essentially suffers "amnesia" with respect to the acts of his alternate personalities. "Christopher" cannot remember any of the acts he performs as "Philip." This is much the same type of situation as a defendant who has no memory of his past in committing a crime or his involvement in an accident. If the courts are unwilling to allow these persons to escape prosecution, we see no reason to find defendant in this case incompetent to stand trial based on his personality disorder.
*294 Badger is an intelligent man who is fully aware of his personality disorder. "Christopher" is also aware that "Philip" commits acts which end up getting "Christopher" into trouble. While "Christopher" does not recall any of these acts, he is aware that a certain period of time has elapsed during which he cannot account for his actions. Thus, while "Christopher" does not deny the acts of "Philip," his concern is his ability to assist his attorney in adequately preparing a defense for a crime of which he has no memory.
We are persuaded that the many avenues of discovery available to defendant will provide his attorney with enough evidence to form a proper defense regardless of his lack of memory. And to the extent that such evidence is discovered, defendant's counsel will be able to provide him with a list of alternatives regarding this defense. While this decision may seem to place a heavy burden on a defendant who is already under the strain of dealing with a troublesome mental disease, the proper place to deal with that is in defendant's defense not with the issue of his competency to stand trial.
Therefore, we hold that defendant, Christopher Badger, is competent to stand trial within the meaning of N.J.S.A. 2C:44b.
NOTES
[1] Badger has been diagnosed as having at least eight different personalities.
[2] Specifically, Martindale felt that treatment of multiple-personality disorders had not progressed to the extent that Badger could be "cured" at any time in the near future.